**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1692-24

CARROL ST LLC,

     Plaintiff-Respondent,

v.

MARCUS LILES,

     Defendant-Appellant.

_____

> Argued March 10, 2026 – Decided April 8, 2026
>
> Before Judges Rose and Torregrossa-O'Connor.
>
> On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. LT-002588-24.
>
> Soo H. Woo argued the cause for appellant (Northeast New Jersey Legal Services, Inc., attorneys; Soo H. Woo, of counsel and on the briefs).
>
> Lindsay R. Baretz argued the cause for respondent (The Lutz Law Firm, LLC, and Lindsay R. Baretz, LLC, attorneys; Tova L. Lutz, of counsel; Jeffrey Zajac, on the brief).

PER CURIAM

Defendant Marcus Liles appeals from a January 24, 2025 Special Civil Part judgment of possession (JOP) for residential premises owned by plaintiff Carrol St LLC and a February 7, 2025 order denying his motion for reconsideration seeking vacatur of the JOP. For the reasons that follow, we vacate the January 24, 2025 JOP and remand for proceedings consistent with the 2020 amendment (Stack Amendment) to the Fair Eviction Notice Act, N.J.S.A. 2A:42-10.15 to -10.17.[1]

I.

The genesis of this protracted dispossess action is plaintiff's May 8, 2024 complaint against defendant seeking eviction for non-payment of rent. In the complaint, plaintiff alleged defendant owed monthly rent payments of $230 for March, April, and May 2024, plus a $57 filing fee, totaling $747. Pursuant to the terms of their September 11, 2023 lease agreement, the tenancy commenced on that date and ended on August 31, 2024. The trial court later noted defendant presumably received rental assistance because the lease agreement reflected a $1,375 monthly rent payment.

---

[1] As we recently noted in Fairkings Partners, LLC v. Daniels, 482 N.J. Super. 520, 522 n.1 (App. Div. 2025) ("The amendment is known as the Stack Amendment because Senator Brian P. Stack was the primary sponsor of the legislation.").

After plaintiff filed its complaint, the matter followed a tortured procedural path, the details of which are convoluted and were much disputed throughout the proceedings. We relate the events that inform our decision from the record before the three Special Civil Part judges, who at various stages of the relevant litigation, adjudicated this all but "summary" proceeding. See R. 6:3-4.

A. First Settlement Agreement

On July 1, 2024, the parties executed a "Tenant to Stay in Premises" settlement agreement, commonly known as a "pay and stay agreement." Pursuant to paragraph 2 of the agreement, defendant agreed to pay $2,357 as follows: $460 by the end of the day on July 1 and $1,897 by August 18. Paragraph 3 of the agreement further obligated defendant "to continue to pay $230 each month by the first of the month during the duration of the payment plan set forth in paragraph 2." The boilerplate terms of paragraph 4 stated, if defendant failed to satisfy his obligations under paragraph 2, "[he] may be evicted as permitted by law after the service of the [w]arrant of [r]emoval" (WOR).

A handwritten notation at the bottom of the second page of the agreement reflects:

> [Defendant] has applied for rental assistance. [Plaintiff] is cooperating. [Defendant] remains exclusively liable for the amount stated herein. Failure of rental assistance program to make any payments shall not [a]ffect [defendant's] obligation herein.

Defendant was self-represented when he signed the agreement; plaintiff was represented by counsel.

1. Breach of the First Settlement Agreement

Shortly thereafter, on August 21, 2024, plaintiff filed a certification of breach of settlement and requested issuance of a JOP and WOR. Plaintiff certified defendant "failed to comply with the terms of [the a]greement by **failing to pay $1,897 on August 19, 2024 and remains in possession of the premises**."

2. JOP

On August 29, 2024, the first judge issued a JOP after breach. The JOP did not specify a sum certain. Nonetheless, consistent with the Stack Amendment,[2] the "options" section of the JOP expressly stated:

> **Paying all Rent Due and Owing**. By law, a tenant can pay all rent due and owing plus proper costs up to three

---

[2] See N.J.S.A. 2A:42-10.16a (permitting the tenant, in a nonpayment of rent eviction matter, up to three days after the WOR is posted or the lockout is executed to submit a rent payment).

(3) business days after the eviction (Step 4 above).[3] The landlord must accept this payment and/or cooperate with a rental assistance program or bona fide charitable organization that has committed to pay the rent.

3. <u>Self-Represented Order to Show Cause (OTSC)</u>

In his self-represented certification in support of an application for an OTSC, defendant claimed he was served with a WOR on August 30, 2024.[4] Defendant acknowledged he owed $1,874 in rent and had no money to deposit with the court. Defendant sought a stay of the lockout stating, verbatim, "welfar will pay 3 month back rent will not pay attorny fees or court cost I receive section 8[5] going back to welfar."

---

[3]  Step 4 refers to the WOR's execution, the last of four steps of the eviction process, "requiring the tenant to vacate the premises and permitting the landlord to change the locks." This section of the JOP emphasizes: **"This is when the eviction (lockout) is completed**."

[4]  The August 30, 2024 WOR was not provided on appeal.

[5]  Section 8 refers to the United States Department of Housing and Urban Development's Section 8 Tenant-Based Assistance Housing Choice Voucher Program. 42 U.S.C. § 1437f.

## 4. Order for Orderly Removal

On September 4, 2024, the landlord tenant judge (second judge) issued an order for orderly removal, staying execution of the WOR until September 11, at 9:00 a.m.

## 5. Counseled OTSC

On September 10, 2024, defendant, with the assistance of counsel, filed an OTSC to vacate the JOP and dismiss the case. In his certification, defendant claimed his sole source of income was $974.25 from Social Security and $200 in food stamps. Specifying his mental and physical health conditions, defendant claimed he "was pressured to sign the agreement" and did not understand "the consequences of a breach of the agreement." He further stated, "I never went before the Judge after signing the settlement agreement."

## B. Second Settlement Agreement

On September 17, 2024, the parties executed another pay and stay agreement. Both parties were represented by counsel. Consistent with Rule 6:6-4, the court was not required to review the agreement in open court.

Under the first paragraph of the agreement, defendant agreed "[t]o the immediate entry of a [JOP]." The agreement provided the WOR would not be issued and the eviction would not occur at that time. Instead, the agreement

6

stated, "if the tenant breaches this agreement, the landlord may file a certification of breach with the court, on notice to the tenant. The [c]ourt may then issue a [WOR] which starts the eviction process."

In paragraph 2 of the agreement, defendant agreed to pay $920, which included September rent, by remitting $230 by September 20, and $690 no later than October 7. In paragraph 3, defendant further agreed to pay $230, representing his portion of the monthly rent "by the 1st of each month."

A handwritten notation at the bottom of the second page of the agreement reflected:

> This agreement shall amend and supersede [the] prior settlement agreement entered into between the parties on 7/1/24.
>
> [Defendant] to dismiss pending OTSC.
>
> [Defendant] waives further claims arising out of subject matter jurisdiction [and defendant] acknowledges DCA[6] was properly noticed.
>
> [(Emphasis added).]

1. Breach of the Second Settlement Agreement

The spirit of the compromise reflected in the parties' pay and stay agreement was short-lived. On October 11, 2024, plaintiff filed a certification

---

[6] Department of Community Affairs.

of breach of settlement. Noting defendant's rent was due on the first of each month, plaintiff averred "[defendant] failed to comply with the terms of th[e] second [a]greement by failing to make his October rent payment on time." Plaintiff sought issuance of a JOP and WOR. In the certification, plaintiff asserted the second settlement agreement afforded defendant "yet another opportunity to get current on his rent," but did not specify the amount due.

2. JOP

On October 23, 2024, the second judge issued a JOP for the premises, finding plaintiff's certification and supporting documentation established defendant "fail[ed] to comply with the terms of the parties' settlement agreement." Similar to the first JOP, the October 23, 2024 JOP did not specify a sum certain and the judgment contained the same Stack Amendment language on eviction proceedings as the first JOP, that is, "a tenant can pay all rent due and owing plus proper costs up to three (3) business days after the eviction." The following day, a WOR was issued and served on defendant requiring him to vacate the premises by November 1.

3. Counseled OTSC

However, on October 31, 2024, defendant filed a counseled OTSC, denying he breached the agreement. In his accompanying certification,

A-1692-24

defendant explained his portion of the rent, after Section 8 housing assistance was credited to his account, was $230 from September 11, 2023 to September 1, 2024, and $286.12 from September 1, 2024 to August 31, 2025. Defendant asserted "[he] made the $230 payment via [Z]elle before September 20, 2024," which he claimed plaintiff retained, and $230 for the October 2024 rent, which he asserted plaintiff returned. Defendant did not specify the date on which he paid the October rent. However, the exhibits annexed to defendant's certification indicate plaintiff returned defendant's $230 payment on October 9, 2024, and refused the October 3, $690 payment made by the Passaic County Board of Social Services.

On November 1, 2024, the second judge heard arguments on defendant's OTSC. Defense counsel claimed defendant had "all the money to become current on rent," but noted plaintiff returned the portion of rent paid by Social Services. Plaintiff's counsel responded, "[T]his is the second negotiated contract that the landlord entered into with this tenant in good faith and . . . <u>his opportunity to cure has passed because this is now a contract breach</u>." (Emphasis added). Affording defendant "the benefit of the doubt" because it appeared he "ha[d] all the funds," but the date on which he paid October's rent

was unclear, the judge granted the show cause order and scheduled a hearing for November 4.

At the outset of the November 4, 2024 return date, defense counsel indicated the parties "reached an agreement." Under the terms of the agreement, defendant paid plaintiff $630 in court that day, with the balance due from Social Services within one week. Plaintiff's counsel acknowledged defendant's rent would be current after his $630 payment and assistance from Social Services, but plaintiff would not sign an agreement memorializing their oral understanding because defendant "w[as] already in breach of contract." The second judge adjourned the matter to November 18.

For reasons that are unclear from the record, defendant's application was carried to December 2, 2024. Defense counsel presented a November 27, 2024 letter from Social Services "declar[ing] payment will be received in about two weeks." Defense counsel emphasized, after Social Services made payment, his client would be current and "also ha[d] December rent . . . to tender." In response to the judge's inquiry as to whether the December rent should be deposited in court, plaintiff's counsel noted "the new settlement" permitted plaintiff to accept "it" "without prejudice." The second judge adjourned defendant's application to December 17.

A-1692-24

During the December 17, 2024 hearing, defendant did not appear, but his girlfriend was present, purportedly with December's rent payment. Defense counsel acknowledged defendant did not pay the December rent, but claimed "there was a little confusion" about the change in plaintiff's management companies. According to defense counsel, "management" told defendant "[o]h, we can't accept the money and . . . you have to talk to the attorney."

Plaintiff's counsel countered both management companies denied making those statements to defendant. Citing her client's ledgers, plaintiff's counsel claimed defendant owed $1,067.36, including December's rent. During the ensuing colloquy among the second judge and both attorneys, the outstanding amount due became unclear. Accordingly, the judge instructed the parties to review the ledgers during recess.

Later that same day in open court, the parties agreed $690 was still owed from Social Services under the September 17, 2024 pay and stay agreement and an additional $304.48 was owed by defendant. Defense counsel informed the judge defendant's girlfriend did not have the payment with her in court, defendant gave the rent to his mother in Virginia to safeguard so that he did not spend it, and defendant could pay the December and January rent by December 29.

A-1692-24

Citing the matter's lengthy history – and noting the purpose of that day's hearing was to enable Social Services to pay its outstanding portion of rent, but defendant still had not paid his portion of the rent – plaintiff's counsel requested the court lift the stay of the WOR so that the lockout could proceed. Accordingly, the judge permitted the lockout, but issued an order for orderly removal, staying the WOR's execution until January 2, 2025. The judge further found if plaintiff received and returned the check from Social Services, defendant would be "out of luck."

4. Self-Represented OTSC

Following service of the WOR, defendant filed a self-represented certification in support of his OTSC application on January 2, 2025. Defendant sought to stop the eviction, claiming he paid $305.88 for December's rent and $286.12 for January's rent on December 31, 2024. That same day, defendant's girlfriend appeared before the third judge in support of defendant's application. Unable to reach plaintiff's attorney by phone, the judge adjourned the matter to the following day.

5. Counseled OTSC

On January 3, 2025, defendant filed another OTSC application. With the assistance of counsel, defendant sought vacatur of the JOP, claiming plaintiff

A-1692-24

accepted rent after the WOR issued thereby waiving its right to evict defendant. In his accompanying certification, defendant asserted: "On December 31, 2024, I paid $592 to the landlord[,] which includes the arrears of $304.48 and the January rent of $286.12." Defendant annexed to his certification a December 31, 2024 receipt from plaintiff's property management system, showing defendant paid $592 against his previous balance of $1067.36, resulting in a current balance of $475.36. The third judge scheduled the matter for a hearing.[7]

On the January 9, 2025 return date of the OTSC, the parties appeared again before the first judge. Defense counsel argued his client was current on his rent, other than the $690 payment from Social Services, which was mailed but not yet received by the landlord. Defense counsel maintained plaintiff waived its eviction rights by accepting the December and January rent payments because the prior order only permitted the landlord to accept the December rent.

Reiterating the matter's lengthy history, plaintiff's counsel noted the second judge granted continuous adjournments to "wait for Social Services to pay." She therefore argued it was inequitable to deem plaintiff's acceptance of the January rent a waiver of its rights after "wait[ing] six months for Social

---

[7] A memorializing order was not provided on appeal. According to the transcript, the matter was scheduled for January 7, 2025. For reasons that are not clear from the record, the matter was not heard until January 9.

A-1692-24

Services to come through."  According to plaintiff's counsel, defendant's open balance was $1,254.60.  Defense counsel disputed the amount, claiming defendant was fully paid and Social Service's $690 portion was en route to plaintiff.

Noting he was not privy to the second judge's prior rulings, the first judge stayed the lockout and ordered the parties to brief the issues raised.  The matter was adjourned to January 24.

During arguments on January 24, 2025 before the first judge, the parties maintained their positions.  Defense counsel again asserted, after payment by Social Services, his client was paid in full.  Plaintiff's counsel emphasized even if defendant was current on his rent obligation, the landlord would not consent to continuing the tenancy in view of the continuous delays.

Noting the JOP was issued after breach of the parties' settlement agreement, not after trial, the judge found he could not "force the landlord to take the money" and ordered plaintiff to return defendant's $500 payment if it remained on account.  The judge therefore denied defendant's show cause application and issued another JOP.  The judge reasoned defendant:  breached two settlement agreements; was afforded the benefit of "two orders for orderly removal, which is not allowed"; and "did not have the full amount of arrears to

14

pay the landlord." The JOP did not specify the amount of rent due. The judge stayed the lockout until February 7.

6. Counseled OTSC

Defendant filed a counseled OTSC seeking vacatur of the January 24, 2025 JOP. On February 7, 2025, the matter was heard by the second judge who denied defendant's application. In her statement of reasons, the judge stated: "Defendant . . . has had numerous opportunities, settlement [a]greements and OTSCs that were granted. His time in this apartment has come to an end. There will be no further stays of the [WOR]." This appeal followed.

C. Post-Judgment OTSC and Stay Pending Appeal

On the same day defendant filed his notice of appeal, he filed in the trial court an OTSC seeking a stay pending appeal. On February 12, 2025, the second judge denied the stay, but declined to enforce the WOR, which had been issued in October, and directed plaintiff's counsel to refile the WOR. On February 20, 2025, the judge vacated the October 2024 WOR, explaining it had expired. See R. 6:7-1(d).

We thereafter granted, on an emergent basis, defendant's motion for a stay of the eviction and removal pending appeal. Our February 28, 2025 order was "conditioned on defendant's payment of rent going forward." We also directed

"plaintiff to accept the three checks from Social Services totaling $690 and future checks pending the outcome of the appeal."

In his merits brief, defendant raises three arguments. Initially, defendant contends, under the Stack Amendment, he had the right to pay all outstanding rent up to three days after the eviction. Noting "[he] was never locked out of the premises," defendant argues he did not lose this right by executing the pay and stay settlement agreement. Secondly, defendant argues the first judge erroneously denied his application to vacate the JOP under Rule 4:50-1(e) ("the judgment . . . has been satisfied") and (f) ("any other reason justifying relief from the operation of the judgment"). Thirdly, defendant asserts, by accepting the January 2025 rent payment, plaintiff waived its right to pursue eviction and, as such, the first judge failed to dismiss the complaint on that ground. For the first time during oral argument before us,[8] defendant cited our December 2025 decision in Fairkings Partners, LLC v. Daniels, 482 N.J. Super. 520, 522 (App. Div. 2025), where we interpreted the Stack Amendment to permit the tenant to pay only the amount of unpaid rent stated in the JOP to avoid eviction.

---

[8] See R. 2:6-11(d)(1) (permitting a party "without leave" to "serve and file a letter calling to the court's attention, with a brief indication of their significance, relevant published opinions issued . . . subsequent to the filing of the brief"). Although defendant failed to comply with the rule, plaintiff's counsel was not hampered in her responding argument.

II.

A summary dispossess proceeding is a creature of an 1847 statute, designed as an expeditious alternative to an ejectment action under the common law. See Hous. Auth. of Morristown v. Little, 135 N.J. 274, 280 (1994) (citing L. 1847, p. 142). Under the Anti-Eviction Act (AEA), N.J.S.A. 2A:18-61.1 to 61.12, possession can only be granted if the landlord establishes one of the enumerated statutory grounds, such as nonpayment of rent. See Cmty. Realty Mgmt. v. Harris, 155 N.J. 212, 239 (1998). "Possession of the premises is the only available remedy for nonpayment of rent, because money damages may not be awarded in a summary dispossess action." Hodges v. Sasil Corp., 189 N.J. 210, 221 (2007).

Accordingly, "[t]he [AEA] affords 'residential tenants the right, absent good cause for eviction, to continue to live in their homes without fear of eviction . . . and thereby to protect them from involuntary displacement.'" 224 Jefferson St. Condo. Ass'n v. Paige, 346 N.J. Super. 379, 383 (App. Div. 2002) (quoting Morristown Mem'l Hosp. v. Wokem Mortg. & Realty Co., 192 N.J. Super. 182, 186 (App. Div. 1983)). It is well-recognized "the [AEA] is remedial legislation deserving of liberal construction," 447 Assocs. v. Miranda, 115 N.J.

17

522, 529 (1989), and its "overall purpose" is to "protect[] blameless tenants from eviction," Chase Manhattan Bank v. Josephson, 135 N.J. 209, 226 (1994).

If a landlord initiates proceedings against a tenant for nonpayment of rent, the tenant may automatically dismiss the case "at any time on or before entry of final judgment" by paying "the rent claimed to be in default, together with the accrued costs of the proceedings." N.J.S.A. 2A:18-55. After trial, the JOP is issued to the prevailing party or, as in the present matter, may be issued based on the parties' consent or after breach of a settlement agreement. See Settlement Agreement (Tenant Remains), Appendix XI-V, www.gannlaw.com (2026). Generally, a WOR cannot be issued until three days after entry of a JOP. N.J.S.A. 2A:18-57.

The Stack Amendment affords even greater protection, permitting tenants evicted under the AEA for nonpayment of rent to pay unpaid rent up to three days after the eviction. More particularly, the Stack Amendment provides:

> a. In an eviction action for nonpayment of rent, pursuant to [N.J.S.A. 2A:18-61.1(a)], the court shall provide a period of three business days after the date on which a warrant for removal is posted to the unit or a lockout is executed due to nonpayment of rent, for the tenant to submit a rent payment. A late fee shall not be imposed in excess of the amount set forth in the application for a warrant for removal if all rent due and owing is paid within the three business day period established by this subsection.

b. (1) A landlord shall accept all payments of rent made by a tenant within the three business day period established by subsection a. of this section and upon payment of the rent due and owing, within two business days thereafter, the landlord shall provide the court with written notice that the rent due and owing was paid. A copy of this notice shall be provided to the tenant.

(2) Upon receipt of the written notice as provided in this subsection, the court shall dismiss with prejudice the action for nonpayment of rent.

(3) If the tenant makes a timely payment within the three business day period established by subsection a. of this section, and the landlord fails to provide the court with written notice of the rent payment, the tenant may file a motion to dismiss with prejudice the action for nonpayment of rent upon notice to the landlord.

[N.J.S.A. 2A:42-10.16a (emphasis added).]

However, neither the Stack Amendment nor N.J.S.A. 2A:18-55 mentions settlement agreements. Further, the parties do not cite, and our independent research has not revealed, any controlling authority addressing whether the Stack Amendment applies to settlement agreements.

It is well established that "[s]ettlement of litigation ranks high in our public policy." Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 475 (App. Div. 2009) (quoting Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472 (1990)). Accordingly, a court must strive to honor a settlement agreement, "absent a

19

demonstration of fraud or other compelling circumstances." Nolan, 120 N.J. at 472 (quoting Pascarella v. Bruck, 190 N.J. Super. 118, 125 (App. Div. 1983)) (internal quotation marks omitted).

A trial court reviewing a summary dispossess action lacks general equitable jurisdiction. See Benjoray, Inc. v. Acad. House Child Dev. Ctr., 437 N.J. Super. 481, 488 (App. Div. 2014). "[W]hile such a 'court may hear equitable defenses and entertain equitable concepts, it is beyond the power of that court to grant . . . equitable relief . . . as may appear just and appropriate under the circumstances presented.'" Carr v. Johnson, 211 N.J. Super. 341, 347 (App. Div. 1986) (quoting Morrocco v. Felton, 112 N.J. Super. 226, 230-31 (Law Div. 1970)). "The equitable jurisdiction of the Special Civil Part in a summary dispossess action is limited to matters of defense or avoidance asserted by the tenant." Chau v. Cardillo, 250 N.J. Super. 378, 385 (App. Div. 1990). Accordingly, relief under Rule 4:50-1 should be granted "sparingly." Little, 135 N.J. at 289.

Against these governing principles, we consider the issues raised on this appeal. As a threshold matter, we part company with the January 24, 2025 order finding defendant breached two settlement agreements. Pursuant to its express terms, the second pay and stay agreement superseded the first. Defendant

20

challenged the validity of the first agreement and agreed to the dismissal of his OTSC with the understanding he would pay the amounts due under the second agreement. We therefore conclude defendant did not breach the first agreement.

Nonetheless, because defendant did not satisfy his unpaid rent obligation under the terms of the second pay and stay agreement – notwithstanding several continuances to do so – we discern no error in the first judge's conclusion that defendant breached the second settlement agreement. Based on our review of the record, defendant was afforded numerous adjournments to satisfy his obligation under the parties' second settlement agreement, which was negotiated with the assistance of counsel.

However, we disagree with the judge's determination that plaintiff's consent was required to accept the rent because defendant breached the settlement agreement. Pursuant to our de novo review, Fairkings, 482 N.J. Super. at 525, we conclude neither the Stack Amendment nor N.J.S.A. 2A:18-55 restricts application to JOPs issued after trial or default judgment. Plaintiff's eviction action, having been premised on nonpayment of rent, afforded defendant the protections of the Stack Amendment and N.J.S.A. 2A:18-55. As we recently noted in Fairkings, "[o]ur interpretation is consistent with the

21

Legislature's remedial purpose in enacting the [AEA] and the Stack Amendment."  482 N.J. Super. at 530.

We therefore turn to the amount of rent due and owing on January 24, 2025, when defendant breached the second settlement agreement.  In Fairkings, we interpreted the Stack Amendment's requirement that tenants facing eviction may meet their payment obligation by paying only the amount set forth in the JOP, not the additional rent that accrues after the JOP is entered.  Id. at 529-30. We note, however, defendant does not argue the JOP is void under Rule 4:50-1(d) for failure to set forth the sum certain.  "An issue not briefed on appeal is deemed waived." Woodlands Cmty. Ass'n, Inc. v. Mitchell, 450 N.J. Super. 310, 319 (App. Div. 2017) (quoting Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011)); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2026).

Accordingly, we vacate the January 24, 2025 JOP and remand the matter to the trial court to determine and fix the amount of rent due and owing on that date.  We leave to the court's sound discretion whether to require testimony at the remand hearing.  We do not suggest a preferred result, but only that defendant is afforded the statutory time to pay the amount fixed pursuant to the Stack Amendment and N .J.S.A. 2A:18-55.

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary, or the argument lacks sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Reversed and remanded.  Jurisdiction is not retained.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1692-24